UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES CHAPMAN,

      Petitioner,                                                          18-CR-55
                                                                          22-CV-499
                                                                          DECISION & ORDER
      v.

UNITED STATES OF AMERICA,

      Respondent.

_____


      Before the Court are motions filed by the petitioner, James Chapman, (1) to

correct his sentence under 28 U.S.C. § 2255, Docket Item 85; (2) to "[d]isqualify [the

g]overnment's [a]nswer" to his section 2255 petition, Docket Item 104; (3) to expand the

record to include several additional affidavits and letters, Docket Item 110; and (4) for

an evidentiary hearing, Docket Item 111.[1]  For the reasons that follow, this Court grants

Chapman's motion to expand the record and denies his motion under section 2255, his

motion to "disqualify" the government's answer, and his motion for an evidentiary

hearing.


## **BACKGROUND**


      On May 9, 2019, Chapman pleaded guilty to Counts 3 and 14 of the indictment,

which charged violations of 18 U.S.C. § 2251(e) (production of child pornography) and

_____

      [1] The citations are to the criminal docket, 18-CR-55, and page numbers refer to
ECF pagination.

18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2) (possession of child pornography),
respectively. Docket Items 33 and 34. In his plea agreement, Chapman agreed that
Count 3 carried a mandatory minimum sentence of 15 years. Docket Item 33 at
¶ 1a. He further agreed that based on his offense level and Criminal History Category,
the United States Sentencing Guidelines ("Guidelines") "range would be a term of
imprisonment of 480 months (40 years)." *Id.* at ¶ 23. And he agreed to waive his right
to appeal or collaterally attack any sentence imposed within or below the Guidelines
range. *Id.* at ¶ 30.

During the plea colloquy, this Court questioned Chapman extensively to ensure
that he was proceeding knowingly and voluntarily. *See* Docket Item 87. The Court
specifically inquired about Chapman's understanding of the statutory minimum sentence
(15 years) that he would receive. *Id.* at 19, 28-29. The Court also confirmed
Chapman's understanding that he would not be able to appeal a sentence of
imprisonment that was less than 480 months or 40 years. *Id.* at 49-50.

At sentencing, consistent with the plea agreement, the Court calculated
Chapman's Guidelines range as 480 months. Docket Item 89 at 21-28. The Court then
sentenced Chapman to a below-Guidelines sentence: 360 months (30 years) on Count
3 and 120 months (10 years) on Count 14, to run concurrently. *Id.* at 60; Docket Item
79.

Chapman did not appeal. But on June 27, 2022, he filed a *pro se* motion to
correct his sentence under 28 U.S.C. § 2255, alleging (1) that his defense counsel had
been ineffective and (2) that his sentence violated the Eighth Amendment's prohibition
of cruel and unusual punishment. Docket Item 85. The government then moved to

compel Chapman's defense attorney, MaryBeth Covert, to file an affidavit responding to Chapman's allegations, Docket Item 88, and the Court granted that motion, Docket Item 90.

After several extensions of time, Covert—a Senior Litigator with the Federal Public Defender's Office for the Western District of New York—filed an affidavit under seal describing the relevant parts of her representation of Chapman.  Docket Item 103. The Court ordered the government to respond to Chapman's motion by November 11, 2022.  Docket Item 101.  In the meantime, on October 28, 2022, Chapman mailed to the Court a "Motion to Disqualify [the] Government's Answer" to his petition.  Docket Item 104.

On November 9, 2022, the government responded to Chapman's section 2255 motion.  Docket Item 105.  About two months later, Chapman replied, attaching—for the first time—two letters he claimed to have sent to Covert.  Docket Item 108.  Along with his reply, Chapman filed an affidavit, Docket Item 109; a motion to expand the record, Docket Item 110; and a motion for an evidentiary hearing, Docket Item 111.

After reviewing Chapman's filings, this Court ordered "Covert to file an affidavit . . . regarding any and all letters she received from . . . Chapman."  Docket Item 113.  In January 2024, Covert submitted her affidavit, Docket Item 115; a short time later, the government responded, Docket Item 116, and Chapman replied, Docket Item 117.

## DISCUSSION

## I.    MOTION TO DISQUALIFY THE GOVERNMENT'S ANSWER

In Chapman's motion to "disqualify" the government's answer—which Chapman mailed on October 28, 2022—he claimed that the government did not comply with the

court-ordered deadline of October 12, 2022, to respond to his section 2255 motion. Docket Item 104 at 1 (citing Docket Item 98).  But on September 19, 2022, this Court had extended the government's deadline until November 11, 2022, Docket Item 101, and the government filed its response two days *before* that deadline expired, *see* Docket Item 105.  This Court therefore denies Chapman's motion to "disqualify."

## II.   MOTION TO EXPAND THE RECORD

As noted above, Chapman attached two letters to his reply that were not included in his initial submission under section 2255.  Docket Item 108 at 15-16.  He then filed a motion to expand the record to include those letters, as well as an affidavit—filed with his reply—in support of that motion.  Docket Items 109 and 110.  In support of his motion to expand the record, Chapman cites Rule 7 of the Rules Governing Section 2255 Proceedings ("Rule 7"), Docket Item 110 at 1, which states that "the judge may direct the parties to expand the record by submitting additional materials relating to the motion," Rule 7(a).  The rule adds that "[t]he materials that may be required include letters predating the filing of the motion, documents, exhibits, and answers under oath to written interrogatories propounded by the judge."  Rule 7(b).  "Affidavits also may be submitted and considered as part of the record."  *Id.*  Finally, the rule provides that "[t]he judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness."  Rule 7(c).

The Court will consider Chapman's letters and affidavit in deciding his section 2255 motion, and his motion to expand the record therefore is granted.  To satisfy Rule 7(c), the Court already has given Covert and the government an opportunity to respond to the additional materials.

4

### III.    MOTION TO CORRECT SENTENCE UNDER 28 U.S.C. § 2255

Chapman seeks relief under 28 U.S.C. § 2255, which provides:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Chapman's motion to correct his sentence claims that his counsel (1) "misadvised" him "concerning [the] plea agreement"; (2) "misadvised" him "concerning sentence exposure"; (3) "induced" him "into accepting the [g]overnment[']s plea agreement"; (4) was "constitutionally ineffective at sentencing"; and (5) "failed to file an appeal as instructed."   Docket Item 85 at 4.   Chapman further argues that his 30-year sentence "constitutes cruel and unusual punishment under the Eighth Amendment," particularly for someone "who is suffering from numerous verified psychological and emotional conditions."   *Id.* at 5.   Chapman asks to be "discharged from his unconstitutional confinement and restraint."   *Id.* at 12.

### A.    Chapman's Appeal Waiver

"A defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable."   *Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016); *see Cook v. United States*, 84 F.4th 118, 122 (2d Cir. 2023).   In fact, if such waivers are not enforced, the promise not to appeal "becomes meaningless and would cease to have value as a bargaining chip in the hands of

defendants."  *Cook*, 84 F.4th at 122 (citing *United States v. Yemitan*, 70 F.3d 746, 748 (2d Cir. 1995)).

"[E]xceptions to the presumption of the enforceability of a waiver . . . occupy a very circumscribed area of [the Second Circuit's] jurisprudence."  *United States v. Burden*, 860 F.3d 45, 51 (2d Cir. 2017) (quoting *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000)).  More specifically, the Second Circuit has

> articulated four grounds on which an appeal waiver may be deemed
> unenforceable: (1) where the "waiver was not made knowingly, voluntarily,
> and competently[";] (2) where the sentence was "based on constitutionally
> impermissible factors, such as ethnic, racial[,] or other prohibited biases[";]
> (3) where the government breached the agreement containing the waiver;
> and (4) where the district court "failed to enunciate any rationale for the
> defendant's sentence."

*Id.* (quoting *Gomez-Perez*, 215 F.3d at 319).

An ineffective assistance of counsel claim "challenging 'the constitutionality of the *process* by which he waived [his right to appeal]'" is one way a petitioner can demonstrate that his plea was not knowing and voluntary.  *See Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (per curiam) (emphasis and alteration in original) (quoting *United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001)); *see also United States v. Lloyd*, 901 F.3d 111, 124 (2d Cir. 2018) (explaining that a defendant's "guilty plea [is] invalid and his appeal waiver [is] unenforceable if he prevail[s] on his claim that he received constitutionally ineffective assistance of counsel during his plea proceedings").  That is because a claim "challenging the attorney's *advice* about [the defendant's] bargaining position . . . connect[s] the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct."  *Parisi*, 529 F.3d at 139 (emphasis in original).

Here Chapman tries to do just that: his motion attempts to circumvent his collateral attack waiver by arguing that his counsel was ineffective because she (1) "misadvised" him "concerning [the] plea agreement"; (2) "misadvised" him "concerning sentence exposure"; and (3) "induced" him "into accepting the [g]overnment[']s plea agreement." Docket Item 85 at 2, 4. For the reasons that follow, none of these claims hold water, and Chapman's waiver of his right to appeal or collaterally attack his conviction and sentence therefore is enforceable.

**B.    Ineffective Assistance of Counsel Claims**

To establish the ineffective assistance of counsel, a defendant must "(1) demonstrate that . . . counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms,' and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." *United States v. Cohen,* 427 F.3d 164, 167 (2d Cir. 2005) (internal citation omitted) (quoting *Strickland v. Washington,* 466 U.S. 668, 688, 693 (1984)). District courts need not address both components if a petitioner fails to establish either one. *Strickland*, 466 U.S. at 697; *Garner v. Lee*, 908 F.3d 845, 861 (2d Cir. 2018).

Under the first prong, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The petitioner may overcome this presumption by showing "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *Strickland*, 466 U.S. at 689. In considering whether counsel "failed to exercise the skills and diligence that a reasonably competent attorney would provide under

7

similar circumstances," *Boria v. Keane*, 99 F.3d 492, 496 (2d Cir. 1996) (emphasis omitted), courts look to the totality of the circumstances, are "highly deferential," and make "every effort . . . to eliminate the distorting effects of hindsight," *Strickland*, 466 U.S. at 688-89.

Under the second prong, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of a guilty plea, the prejudice prong requires the defendant to "show that there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (discussing ineffective assistance claim in the context of a motion to withdraw a plea). That is, a defendant must show that "the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012).

A defendant may make this showing by "producing both a sworn affidavit or testimony stating that he would have accepted or rejected a plea agreement but for his counsel's deficient performance and also some additional 'objective evidence' supporting his claim." *United States v. Frederick*, 526 F. App'x 91, 93 (2d Cir. 2013) (summary order) (quoting *United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998)). Where a defendant specifically claims that counsel misled him as to the possible sentence that might result from his guilty plea, the "issue is whether the defendant was aware of actual sentencing possibilities, and if not, whether accurate information would have made any difference in his decision to enter a plea." *Arteca*, 411 F.3d at 320 (citing *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992)); *United States v.*

*Sweeney*, 878 F.2d 68, 70 (2d Cir. 1989) (counsel's performance is generally not considered deficient even if counsel made an incorrect estimation or prediction of sentencing before the defendant pleaded guilty).

### 1.      Advice in the Plea-Bargaining Process

Chapman generally argues that his waiver and pleas were not knowing and voluntary because Covert "misadvised" him about his sentencing exposure, "misadvised" him about the plea agreement, and "induced" him into accepting it.   Docket Item 85 at 13-19.   These arguments are all variations of the same theme: that the only reason Chapman accepted the plea agreement was because Covert told him that "he would receive a 10-year sentence and be out in 7 years with good time."   *Id.* at 14.   But that claim is contradicted both by Covert's first affidavit and by the record of the plea hearing itself, in which Chapman—under oath—acknowledged that he understood the mandatory minimum to be 15 years and that he might well get more than twice that.

In her first affidavit, Covert says that before entering into the plea agreement, she met with Chapman at the jail on approximately eleven occasions—and had frequent phone calls beyond those visits—to discuss the case.   Docket Item 103 at ¶ 6.   During those meetings, Covert advised Chapman about the terms of the plea agreement, the potential penalties, and the Guidelines range if he were convicted after trial; they also discussed the strength of the government's case against Chapman.   *Id.* at ¶¶ 6-10.

Covert states that she reviewed the plea agreement with Chapman multiple times, and "[a]t no time did [she] advise . . . Chapman that his 'sentencing [G]uidelines would be 15-40 years,'" as he claims.   *Id.* at ¶ 11.   Nor did she ever promise him that the Court would impose a ten-year sentence.   *Id.* at ¶ 15.   On the contrary, Covert says, she

"repeatedly advised . . . Chapman that the lowest possible sentence the Court could impose, if it chose to vary down from the recommended sentencing [G]uideline[s] range . . . , was 15 years." *Id.* According to Covert's affidavit, Chapman "was aware of his options" and ultimately "chose to enter a plea of guilty pursuant to the written plea agreement," which "capp[ed] his statutory exposure at 40 years" rather than life and provided the ability to argue for acceptance of responsibility and for a non-Guidelines sentence. *Id.* at ¶¶ 23-24.

Chapman's claims to the contrary are further undercut by his sworn statements to this Court at the change of plea hearing. Under oath at that hearing, Chapman acknowledged that he had discussed the charges against him, his rights, the proposed plea agreement, and his options with Covert; that he was satisfied with Covert's advice and counsel; that he had read the plea agreement and discussed it with Covert before signing it; and that he understood and agreed with everything in it. Docket Item 87 at 8, 13-14. The Court confirmed with Chapman that Covert had advised him of all the rights he was giving up by pleading guilty (including his unrestricted right to appeal), that he understood those rights, and that by pleading guilty he was giving up those rights willingly. *Id.* at 12.

Chapman further confirmed that other than what was in his plea agreement, (1) no one had made any promises, representations, or guarantees to him in an effort to get him to plead guilty; (2) no one had promised him leniency or a particular sentence; (3) no one had threatened him, a family member, or anyone close to him to make him plead guilty; and (4) no one was forcing him to plead guilty. *Id.* at 14-15. The Court told Chapman that the decision to plead guilty was his alone, not his lawyer's; Chapman

responded that he wanted to plead guilty and that his decision was made voluntarily and of his own free will.  *Id.* at 15.

As to his possible sentence, Chapman said that he had been advised of and understood the maximum and mandatory minimum penalties for both charges—including the 15-year mandatory minimum term of imprisonment for Count 3.  *Id.* at 18. What is more, the Court twice explicitly asked Chapman under oath about his understanding of the 15-year mandatory minimum, and both times Chapman indicated that he understood.  *See id.* at 19 ("THE COURT: Do you understand that for Count 3, there is also a mandatory minimum term of imprisonment of at least 15 years?  THE DEFENDANT: Yes, sir.  THE COURT: Do you understand that I'm required by law to sentence you to at least 15 [years] in prison, I can't sentence you to any less than that? THE DEFENDANT: Yes, I understand."); *id.* at 28-29 ("THE COURT: Do you understand that the mandatory minimum term of imprisonment is 15 years for Count 3, and I'm required to sentence you to at least that much time in prison?  THE DEFENDANT: Yes, sir.").

The Court also asked Chapman, "Do you understand that the sentence imposed may be different from any estimate that your lawyer or anybody else may have given you?" and "do you understand that neither the uncertainty of your eventual sentence nor any disappointment you may have about the [G]uidelines range will be a basis to withdraw your plea?"  *Id.* at 45.  Chapman answered "yes" to both questions.  *Id.*  The Court then reviewed with Chapman the Guidelines calculations in the agreement—including the Guidelines range of 480 months of imprisonment.  *Id.* at 45-46.

Chapman specifically acknowledged, both under oath during the colloquy and in his plea agreement, that he was giving up his right to appeal or collaterally attack his conviction as well as all or part of his sentence as long as it was within or less than the Guidelines range of "480 months or 40 years of imprisonment." *Id.* at 49-50; Docket Item 33 at ¶ 30. And Chapman further said that he had discussed giving up his right to appeal with Covert and that based on that discussion, he agreed to give up his right to appeal consistent with the plea agreement and the Court's explanation. Docket Item 87 at 50.

Chapman's "bare allegations" in his petition do not overcome his sworn statements, which must be given the "presumptive force of truth." *See Mejia v. United States*, 740 F. Supp. 2d 426, 429 (S.D.N.Y. 2010) (citing *Hernandez*, 242 F.3d at 112-13). Based on Covert's affidavit and the record of the plea proceeding—which corroborate each another—this Court has no reason to conclude that Covert "failed to exercise the skills and diligence that a reasonably competent attorney would provide under similar circumstances." *Boria*, 99 F.3d at 496 (emphasis omitted).

What is more, even assuming for the sake of argument "that counsel misadvised [Chapman] in some way regarding his potential sentence, this error was cured by the Court's thorough questioning of [him] throughout the plea allocution and the fact that the potential sentences were laid out in the [p]lea [a]greement and in the allocution." *LaMarco v. United States*, 336 F. Supp. 3d 152, 170 (E.D.N.Y. 2018) (citing *Ventura*, 957 F.2d at 1058). As outlined above, this Court thoroughly questioned Chapman before he pleaded guilty, ensuring in particular that he understood the mandatory

minimum sentence of 15 years, the Guidelines range, and the potential maximum sentence he could receive.

The case Chapman cites, *United States v. Gordon*, 156 F.3d 376 (2d Cir. 1998), is inapposite.  In that case, the defendant's attorney wrote a letter advising him that the maximum potential sentence under the indictment was 120 months.  *Id.* at 377.  After the defendant rejected the offered plea and was convicted at trial, he learned that his Guidelines range was actually much higher*,* and he was sentenced to 210 months of imprisonment.  *Id.* at 377-78.  The Second Circuit agreed with the defendant that his counsel had been ineffective in failing to advise him correctly of his potential sentencing exposure and that, but for the inaccurate guidance, he would have accepted the offered plea.  *Id.* at 380-81.

Unlike Chapman, the defendant in *Gordon* did not participate in a plea colloquy that confirmed he accurately understood his sentencing exposure.  *See, e.g.*, *United States v. Sam*, 2016 WL 8540860, at *11-12 (D. Vt. Dec. 8, 2016) (distinguishing *Gordon* because the petitioner "was made aware of his actual sentence exposure multiple times prior to agreeing to enter the [p]lea [a]greement"), *report and recommendation adopted*, 2017 WL 2804915 (D. Vt. June 28, 2017); *Illarramendi v. United States*, 2020 WL 656698, at *10 (D. Conn. Feb. 11, 2020) (similarly distinguishing *Gordon*).  Further, unlike the defense attorney in *Gordon*—who admitted that he mistakenly advised his client about the maximum sentencing exposure— Covert's affidavit belies the suggestion that she incorrectly advised Chapman about his sentencing exposure or his options.

In sum, Chapman has not shown he received ineffective assistance of counsel in relation to his pleas of guilty or the plea agreement. His first three claims in the petition concerning ineffective assistance of counsel—that counsel misadvised him regarding the plea agreement, misadvised him regarding his sentence exposure, and induced him into accepting the plea agreement—therefore fail.

### 2. Evidence Presented at Sentencing

Chapman next argues that Covert failed to present a psychiatrist for mitigation purposes at sentencing. Docket Item 85 at 19-20. Chapman says that the psychiatrist would have verified his psychiatric diagnoses and medications and explained the treatment options. *Id.* But even if this argument survives Chapman's appeal waiver,[2] it is without merit, as he has not shown that he was prejudiced by Covert's performance at sentencing.

Prior to sentencing, Covert submitted numerous medical and other records related to Chapman's psychiatric evaluations, assessments, treatments, and related medical history. *See* Docket Item 54. Covert discussed these records at length in her sentencing memorandum, *see* Docket Item 84 at 10-20, and at the sentencing proceeding itself, *see* Docket Item 89 at 49-56. And the presentence investigation report also addressed that mental health history, including Chapman's medications. Docket Item 62 at 40.

---

[2] Chapman's arguments regarding his counsel's performance at sentencing do not fall within the few narrow exceptions that render the waiver unenforceable. *See Cook*, 84 F.4th at 122.

The record demonstrates that Chapman's psychiatric conditions, mental health, and abuse history was discussed at length during sentencing.  In fact, the Court explicitly referred to that history when it explained the reasons for the sentence, its recommendation regarding mental health treatment while incarcerated, and the conditions related to mental health treatment upon release.  *See* Docket Item 89 at 68-70.  So Chapman has not shown how the failure to present a psychiatrist at sentencing resulted in any prejudice to him.

### 3.    Failure to File an Appeal

The Second Circuit "take[s] very seriously the need to make sure that defendants are not unfairly deprived of the opportunity to appeal, even after a waiver appears to bar appeal."  *Campusano v. United States*, 442 F.3d 770, 775 (2d Cir. 2006).  Counsel will be deemed ineffective if she failed to file an appeal after receiving a "specific instruction" from her client to do so.  *Id.* at 773 (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)); *see United States v. Moreno-Rivera*, 472 F.3d 49, 52 (2d Cir. 2006) ("What matters for purposes of that claim is whether [the defendant]'s trial counsel 'fail[ed] to file a *requested* appeal' . . . ." (emphasis in original) (quoting *Garcia v. United States*, 278 F.3d 134, 137 (2d Cir. 2002))).  This is true even when the defendant has entered into a valid appeal waiver.  *Campusano*, 442 F.3d at 771-72.

The district court is required to engage in fact-finding to determine whether the defendant specifically requested an appeal.  *Id.* at 776.  But that does not mean that a hearing is required, and the court "has discretion to determine if a testimonial hearing will be conducted."  *Id.*  Indeed, the court need not hold an evidentiary hearing "where both parties have filed affidavits and thus 'the testimony of [petitioner] and his trial

counsel would add little or nothing to the written submissions.'"  *Kapelioujnyi v. United States*, 779 F. Supp. 2d 250, 253 (E.D.N.Y. 2009), *aff'd*, 422 F. App'x 25 (2d Cir. 2011) (quoting *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001)).

Citing *Campusano*, Chapman argues that he instructed Covert to file an appeal after sentencing because he did not receive the 10-year sentence that Covert "promised" him.  Docket Item 85 at 21, 26.  And according to Chapman, Covert incorrectly advised him that no appeal was possible because of the appeal waiver.  *Id.*

Covert's first affidavit says that after sentencing, she twice advised Chapman of his right to appeal and that both times, he confirmed he did not wish to appeal his sentence.  Docket Item 103 at ¶¶ 28-30.  Covert also submitted memoranda from her file that memorialized these two discussions.  Docket Item 103-1.  The government, in its response, noted that Chapman's petition provided no specifics or supporting evidence—such as a letter or phone call record—to show that he asked Covert file an appeal.  Docket Item 105 at 16-17.

In his reply, Chapman for the first time included two letters that he alleges "prove[] he instructed [Covert] to appeal his sentence."  Docket Item 108 at 10; *see also id.* at 15-16 (letters dated July 14, 2021, and July 23, 2021).  Chapman claims that he "didn't enclose the letters with his initial 2255 motion because he wanted to give . . . Covert the opportunity to tell the truth when she submitted her '[a]ffidavit.'"  *Id.* at 10.

In response, Covert's second affidavit states that "[a]t the time of [Chapman's] sentencing in . . . July 2021 (during COVID), it was the practice of the Federal Public Defender's Office for the Western District of New York for a legal assistant to scan all incoming mail."  Docket Item 115 at ¶ 6.  "[U]pon scanning, electronic copies of the

correspondence would be saved by that same legal assistant to the client's electronic file, and the originals of the correspondence were forwarded to the attorney assigned to the case for review and ultimately filed in the paper case file." *Id.*

Covert then affirms that "upon a thorough review, neither the paper nor electronic copy of . . . Chapman's file in this matter contain either of the[] letters" he claims to have sent. *Id.* at ¶ 7. Covert adds that she has "no recollection of having received letters from . . . Chapman, wherein he direct[ed her] to file an appeal, or inquiring about the status of an appeal." *Id.* "Had [Covert] received a request to file an appeal," she says, "[she] would have immediately done so." *Id.* Finally, Covert describes five other letters from Chapman that were included in his file, none of which "ma[d]e any reference to . . . Chapman having made any request for an appeal to have been filed, nor do they contain any inquiry regarding the status of any such appeal." *Id.* at ¶¶ 8-9.

Following Covert's second affidavit, Chapman submitted a sur-reply. Docket Item 117. Among other things, he stated—for the first time—that he had asked Covert to appeal in recorded phone calls from the federal holding facility. *Id.* at 2-3. Chapman again urges that "this Court must conduct an [e]videntiary hearing to resolve these factual disputes." *Id.* at 3.

As explained above, this Court has the discretion to determine whether an evidentiary hearing is necessary to make a factual determination about whether the petitioner asked his counsel to appeal. *See Chang*, 250 F.3d at 86 (explaining that a "district court may use methods under [s]ection 2255 to expand the record without conducting a full-blown testimonial hearing" (citing *Blackledge v. Allison,* 431 U.S. 63, 81-82 (1977))). In cases where the district court determines an evidentiary "hearing

would not offer any reasonable chance of altering its view of the facts," it is within the "court's discretion to choose a middle road that avoid[s] the delay, the needless expenditure of judicial resources, the burden on trial counsel and the government, and perhaps the encouragement of other prisoners to make similar baseless claims that would . . . result[] from a full testimonial hearing." *Id.*; *see also Florez v. United States*, 2007 WL 162764, at *4 (E.D.N.Y. Jan. 18, 2007) (finding that "a full testimonial hearing [wa]s unnecessary" because "[a] review of the papers submitted by the parties, including a detailed affidavit from [the attorney], [we]re sufficient to decide this issue"). Such is the case here.

After careful review of Chapman's and Covert's submissions, this Court finds that a full testimonial hearing "would add little or nothing to the written submissions." *See Chang*, 250 F.3d at 86. In particular, this Court finds that Covert's two sworn affidavits and the contemporaneous memoranda from her file are more credible than Chapman's belated and self-serving letters and assertions. *See United States v. Delgado*, 2022 WL 4396627, at *5 (S.D.N.Y. Sept. 23, 2022) (finding that no evidentiary hearing was necessary where "[t]he credible assertions in counsel's sworn statement undermine[d the petitioner's] self-serving assertion that he specifically instructed defense counsel to file an appeal").

Moreover, the Court is not persuaded that Chapman waited to submit the letters he allegedly sent to Covert to give her "the opportunity to tell the truth." *See* Docket Item 108 at 10. Especially because the Federal Public Defender's office has no record of either letter but does have other letters not mentioning an appeal, it is particularly suspicious that the letters were filed only after Chapman received the government's

response observing that Chapman had no evidence that he asked his attorney to appeal.  Similarly, Chapman's belated assertion that he asked Covert to appeal during a recorded phone call is contradicted by her affidavit.

This is not a case like *Andino v. United States*, where this Court recently resolved a similar dispute by holding a hearing and then finding in favor of the petitioner and permitting a late appeal.  *See* 2022 WL 2974316 (W.D.N.Y. July 27, 2022) (decision and order granting an evidentiary hearing) ("*Andino I*")*;* 2024 WL 150099 (W.D.N.Y. Jan. 12, 2024) (decision and order granting 2255 motion) ("*Andino II*").  There, defense counsel had stated in response to the petitioner's motion that he had "no independent recollection of [the petitioner's] ever having asked [him] to file a notice of appeal." *Andino I*, 2022 WL 2974316, at *3.  But defense counsel "did not have any contemporaneous notes of his meetings with [the petitioner], nor did he have any notes to the file regarding his discussions with [him]."  *Andino II*, 2024 WL 150099, at *3.

Here, on the other hand, Covert affirmatively stated that she "advised [Chapman] of his right to appeal [on July 14, 2021,] and [he] informed [her] that he did not wish to file an appeal of his sentence."  Docket Item 103 at ¶ 28; *see also id.* at ¶ 29 (Covert's affirming that on July 22, 2021, "Chapman was [again] advised of his right to appeal and counsel confirmed that he did not wish for an appeal to be filed").  What is more, Covert submitted to the Court memoranda from her file in which she contemporaneously had memorialized those discussions.  Docket Item 103-1.  Therefore, in contrast to *Andino*, an evidentiary hearing here "would add little or nothing to the written submissions."  *See Chang*, 250 F.3d at 86.

For all those reasons, Chapman's motion for an evidentiary hearing, Docket Item 111, is denied.

### C.    Eighth Amendment Claim

Chapman's Eighth Amendment challenge to his sentence falls squarely into the territory covered by his appeal waiver.  As explained above, Chapman acknowledged under oath during his plea colloquy that he was waiving his right to appeal or collaterally attack a sentence of up to 40 years' imprisonment.  *See* Docket Item 87 at 50 ("THE COURT: So that means you're giving up your right to appeal as long as my sentence does not exceed 480 months or 40 years of imprisonment . . . .  THE DEFENDANT: Yes, sir.  THE COURT: Do you understand you're giving up your right to challenge your sentence if it's within or less than that range, even if in the future you learn facts that you don't know now that you think would justify a lesser sentence, and even if in the future the law changes in a way that you think would justify a lesser sentence?  THE DEFENDANT: Yes, sir.").  Chapman's Eighth Amendment challenge does not fall into any of the narrow circumstances that the Second Circuit has recognized as invalidating an appeal waiver.  *See Burden*, 860 F.3d at 51.

But even if Chapman could somehow circumvent his appeal waiver, his claim still would not succeed.  The Second Circuit has found that "[l]engthy prison sentences, even those that exceed any conceivable life expectancy of a convicted defendant, do not violate the Eighth Amendment's prohibition against cruel and unusual punishment when based on a proper application of the Sentencing Guidelines or statutorily mandated consecutive terms."  *United States v. Yousef*, 327 F.3d 56, 163 (2d Cir. 2003).  The Eighth Amendment "forbids only extreme sentences that are grossly

20

disproportionate to the crime." *Id.* (citation and internal quotation marks omitted). Accordingly, in noncapital cases, "it is exceedingly rare to uphold a claim that a sentence within the statutory limits is disproportionately severe." *United States v. Adams*, 768 F.3d 219, 225 (2d Cir. 2014) (citing *United States v. Caracappa*, 614 F.3d 30, 44 (2d Cir. 2010)).

Here, the Court sentenced Chapman to 360 months (30 years) on Count 3, and 120 months (10 years) on Count 14, to run concurrently.  Docket Item 89 at 2, 60.  As the Court noted, that sentence took into account the seriousness of the crime— including the "horrific" nature of Chapman's "prey[ing] on vulnerable young girls" and having sex with them for money when he knew they were underage.  *See id.* at 67-70. The Court also considered Chapman's significant criminal history and "repeated disregard for the rules and what the law is."  *Id.* at 67-68.  Nonetheless, after considering all the relevant factors under 18 U.S.C. § 3553(a), the Court determined that a sentence of 30 years in total—well below the Guidelines range of 40 years—was "sufficient but not greater than necessary."  *Id.* at 70.

That was in part because of the Court's recognition that Chapman had "been dealt a tough hand" and that his traumatic "upbringing has resulted in him being where he is."  *Id.* at 68-69.  Moreover, the Court acknowledged Chapman's health issues and psychological conditions and "recommend[ed] to the Bureau of Prisons that [Chapman] be housed in a facility that has the wherewithal to provide him with the mental health treatment and the physical treatment necessary to house him appropriately and to rehabilitate him appropriately."  *Id.* at 66.

For all those reasons, the Court finds that Chapman's sentence was not disproportionate—let alone "grossly disproportionate"—to his crimes. Accordingly, this Court finds that even if Chapman's claim survives his appeal waiver, he has not shown that his sentence violates the Eighth Amendment.

## CONCLUSION

For the reasons stated above, Chapman's motion to expand the record, Docket Item 110, is GRANTED, and his motions to "disqualify" the government's answer, Docket Item 104; for an evidentiary hearing, Docket Item 111; and to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, Docket Item 85, are DENIED. His petition in W.D.N.Y. Case No. 22-cv-499 is DISMISSED, and the Clerk of the Court shall close that case.

The Court hereby certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States,* 369 U.S. 438 (1962). The Court also certifies under 28 U.S.C. § 2253(c)(2) that because the issues raised here are not the type of issues that a court could resolve in a different manner, and because these issues are not debatable among jurists of reason, the petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, the Court denies a certificate of appealability.

Chapman must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within 60 days of the date this decision and order.  *See Williams v. United States*, 984 F.2d 28, 31 (2d Cir. 1993).  Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

      SO ORDERED.

      Dated:   February 29, 2024
              Buffalo, New York

_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE